UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                                       :

OVERSEAS VENTURES, LLC,                                   :

                                                                                                      :          12 Civ. 1033 (PAE)
                                                             Plaintiff,          :
                                             -v-                                          :          OPINION & ORDER
                                                                                                      :

ROW MANAGEMENT, LTD., INC. d/b/a ResidenSea    :
Management, Ltd., THE WORLD OF RESIDENSEA II,  :
LTD., and SHETLAND INTERNATIONAL                  :
INVESTMENTS, LTD.,                                              :
                                                                                                     :
                                                       Defendants.      :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Defendant ROW Management, Ltd., d/b/a ResidenSea Management, Ltd., ("ROW") moves to dismiss the claims against it for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Plaintiff Overseas Ventures, LLC ("Overseas Ventures") opposes that motion. For the reasons that follow, the motion to dismiss is denied as to Count Three and granted as to Counts Four and Five against ROW.

## I. Background[1]

---

[1] The Court's account of the underlying facts in this case is drawn from the Complaint ("Compl.") and the exhibits attached thereto, including the Residence Agreement Assignment and Assumption Agreement ("Residence Agreement") (Ex. 1), the 2008 Residency Rights Sales and Marketing Agreement ("2008 Marketing Agreement") (Ex. 2), and the 2011 Residency Rights Sales and Marketing Agreement ("2011 Marketing Agreement") (Ex. 3) (collectively, the "Marketing Agreements"). The Court's account also derives from the Affidavit of Jessica Estrada ("Estrada Aff."), submitted by Overseas Ventures; the Declaration of Thomas A. Leghorn ("Leghorn Decl."), and the exhibits attached thereto, submitted by ROW; and the Declaration of Paul Smith ("Smith Decl."), also submitted by ROW. On a motion to dismiss for lack of personal jurisdiction, the Court may consider extrinsic evidence such as affidavits and other supporting materials. *See Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012) (citing *Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

**A. The Sale of Apartments 601 and 603**

This case involves a dispute over two apartments aboard a private yacht, named "The World." In 2004, Overseas Ventures, a Michigan LLC, bought two apartments, Apartment 601 and Apartment 603, on The World. Compl. ¶¶ 1, 7. In 2008, Overseas Ventures sought to sell the apartments, either together or separately. *Id.* ¶ 10. Overseas Ventures engaged ROW, a Florida corporation, as its sales and marketing representative. *Id.* ¶¶ 2, 11.

On August 25, 2008, Overseas Ventures and ROW entered into a Marketing Agreement, contemplating the sale of both apartments together. *Id.* ¶ 11. The 2008 Marketing Agreement gave ROW the "exclusive right to market for sale the Residency Rights to Apartment 601/603." 2008 Marketing Agreement ¶ 1.

On October 6, 2011, after failing to sell the two apartments for three years, Overseas Ventures and ROW entered into a second Marketing Agreement, this time, to "market for sale the Residency Rights to Apartment 603." 2011 Marketing Agreement ¶ 1. The 2011 Marketing Agreement contains largely the same terms as the 2008 Marketing Agreement, save that it refers only to Apartment 603, and that ROW's right to market the apartment was non-exclusive. *Id.*

By their terms, both Marketing Agreements are governed by Florida law. Each also contains a forum selection clause that provides for exclusive venue for any action thereunder in Florida: The 2008 Marketing Agreement provides that "[e]xclusive venue for any action brought hereunder shall lie in Miami, Dade County [sic], Florida," 2008 Marketing Agreement ¶ 12; the 2011 Marketing Agreement provides that "[e]xclusive venue for any action brought hereunder shall lie in Broward County, Florida." 2011 Marketing Agreement ¶ 12.

In November 2011, ROW advised Overseas Ventures that it had found a buyer for Apartment 603. Compl. ¶ 16. On November 30, 2011, Overseas Ventures, as the seller, entered

into the Residence Agreement with the buyer, Shetland International Investments, Ltd. ("Shetland"), a Switzerland company; the ship owner, The World of ResidenSea II, Ltd. ("TWOR"), consented to the sale. The Residence Agreement transferred to Shetland the residency rights for the "Apartment," defined as Apartment 603, for $1 million. Residence Agreement ¶ 1; Compl. ¶ 21. The Residence Agreement also contains a forum selection clause. In it, the parties "irrevocably agree[] to submit to the exclusive jurisdiction of the Supreme Court of the State of New York, New York County, of the United States of America, or of the United States District Court for the Southern District of New York." Residence Agreement ¶ 8. ROW drafted the Residence Agreement, but was not a named party to it. Compl. ¶¶ 17–18.

On December 1, 2011, one day after the closing, Overseas Ventures sent a letter to TWOR, asking for details about how to board the ship in order to clean out Apartment 603 for Shetland. *Id.* ¶ 23. In the letter, Overseas Ventures stated that its principals planned to stay in Apartment 601 while preparing Apartment 603 for Shetland. *Id.* An attorney for ROW and TWOR, however, thereupon notified Overseas Ventures that Shetland and TWOR believed that Shetland now owned *both* Apartment 603 *and* Apartment 601. *Id.* ¶ 24. In support, TWOR cited, *inter alia,* marketing materials that described Apartment 603 as consisting of the space assigned to both apartments. Leghorn Decl. Ex. B. As a result, TWOR denied Overseas Ventures access to Apartment 601 and to the yacht. Compl. ¶ 25.

### B. Overseas Ventures' Complaint

On February 7, 2012, Overseas Ventures filed its complaint in this diversity action. It seeks to clarify that it is the owner of Apartment 601 and that it sold only Apartment 603, and also seeks monetary damages from Shetland, TWOR, and ROW, including for lost rental

income.  Compl. ¶¶ 33, 76.  The Complaint relies on the forum selection clause in the Residence Agreement as its basis for asserting that venue is proper in this District.  *Id.* ¶ 6.

The Complaint contains five counts.  Counts One and Two are against Shetland and TWOR, respectively, and are not at issue in this motion.[2]  Counts Three through Five are against ROW.  Count Three accuses ROW of aiding and abetting in Shetland's conversion of Apartment 601, based on ROW's refusal to notify TWOR that only Apartment 603 had been sold under the Residence Agreement.  *Id.* ¶ 56.  Count Four is a breach of contract claim.  It alleges that ROW breached the 2008 and 2011 Marketing Agreements by giving inaccurate and misleading information to potential buyers, including Shetland, as to the nature of property being sold, and by failing to use best efforts to market and sell the two apartments.  *Id.* ¶ 64.  Finally, in Count Five, Overseas Ventures claims that ROW, as its broker under the Marketing Agreements, breached the fiduciary duties it held towards Overseas Ventures under Florida law.  *Id.* ¶¶ 67–70.

**C. ROW's Motion to Dismiss**

On April 23, 2012, ROW moved to dismiss.  It argues that it is not subject to personal jurisdiction in New York because (1) it is not bound by the forum selection clause in the Residence Agreement, and (2) Overseas Ventures has not alleged or shown that ROW engages in sufficient business activities in New York to support personal jurisdiction.  Def. Br. 1.  TWOR and Shetland have not objected to personal jurisdiction, or moved to dismiss on any other ground, but have instead answered the Complaint.  On this motion, therefore, the only counts at issue are Counts Three, Four, and Five—the three counts brought against ROW.

---

[2] Count One is a claim for conversion against Shetland as to Apartment 601; Overseas Ventures claims that the Residence Agreement covered only Apartment 603, and not also Apartment 601. Compl. ¶¶ 34–42.  Count Two is a claim for conversion, and for aiding and abetting in Shetland's conversion, against TWOR.  Compl. ¶¶ 43–53.

In response, Overseas Ventures argues that personal jurisdiction over ROW exists based on the forum selection clause in the Residence Agreement, under which the parties submit to the exclusive jurisdiction of designated courts in New York, including this Court.  Pl. Br. 4–6; Residence Agreement ¶ 8.  In reply, ROW asserts that the forum selection clause does not apply to it, because it is not a signatory to the Residence Agreement.  Def. Reply Br. 2–5.

On October 17, 2012, the Court heard oral argument on ROW's motion to dismiss.

## II. Discussion

### A. The Legal Standard

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists."  *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) (italics added); *see also A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79 (2d Cir. 1993); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  Where this determination is made prior to discovery, "the plaintiff's *prima facie* showing may be established solely by allegations."  *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990); *see also Thomas*, 470 F.3d at 495 (accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor); *Marine Midland Bank*, 664 F.2d at 904 ("If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials." (italics added)).  Because neither party disputes that the identified signatories entered into the Marketing and Residence Agreements, whether the forum selection clauses in those agreements apply to ROW presents a question of law, not fact.

In determining whether there is personal jurisdiction, the Court applies a two-part test.  First, the Court must decide whether personal jurisdiction over Overseas Ventures' claims is

5

supplied by the forum selection clause. If so, the analysis ends there. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."); *Export–Import Bank of the U.S. v. Hi–Films S.A. de C. V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010) ("Where an agreement contains a valid and enforceable forum selection clause, however, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process.").

Second, to the extent that the forum selection clause does not supply personal jurisdiction over a particular claim or claims, the Court inquires whether there is personal jurisdiction over ROW under principles of New York law, based either on general jurisdiction, *see* New York Civil Practice Law and Rules ("C.P.L.R.") § 301, or specific jurisdiction, *see* C.P.L.R. § 302. If jurisdiction is found on either ground, the Court then inquires whether "an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *see generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).

### B. The Forum Selection Clause in the Residence Agreement

Overseas Ventures argues that there is personal jurisdiction over ROW in this District based on the forum selection clause in the Residence Agreement. ROW disputes that argument, on the ground that it is not a signatory to that agreement. Whether the forum selection clause supplies personal jurisdiction must be determined on a claim-by-claim basis. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 393 (2d Cir. 2007) (finding only one claim against one defendant covered by forum selection clause).

### 1. Is ROW Subject to the Forum Selection Clause?

In assessing whether a party is subject to a forum selection clause, the Court inquires: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause was "mandatory or permissive," *i.e.*, "whether the parties are *required to* bring any dispute to the designated forum or simply *permitted* to do so"; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause." *Phillips*, 494 F.3d at 383 (citation omitted). If all three conditions are met, the forum selection clause is presumed enforceable. Fourth and finally, the Court inquires "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 383–84 (citation omitted); *see also Am. Steamship Owners Mut. Prot.& Indem. Ass'n v. Am. Boat Co.*, No. 11 Civ. 6804 (PAE), 2012 WL 527209, at *3 (S.D.N.Y. Feb.17, 2012).

The first two conditions are easily met in this case. In general, awareness by a non-signatory of a forum selection clause or of the contract in which such a clause is contained is enough to satisfy the first condition. *KTV Media Intern., Inc. v. Galaxy Grp., LA LLC*, 812 F. Supp. 2d 377, 384 (S.D.N.Y. 2011). "Even '[i]n the absence of direct communication of a forum-selection clause to a non-signatory, the non-signatory may be nevertheless bound by the clause' if . . . the non-signatory is 'closely related' to a signatory to the contract containing the forum selection clause." *Id.* (quoting *Great N. Ins. Co. v. Constab Polymer-Chemie GmbH & Co.*, No. 5:01-CV-0882 (NAM)(GJD), 2007 WL 2891981, at *8 (N.D.N.Y. Sept. 28, 2007)). Here, Overseas Ventures alleges, and ROW does not dispute, that ROW, its broker, utilized its own forms and contract to draft the Residence Agreement between Overseas Ventures and

Shetland. Compl. ¶ 17. Because that agreement contains the forum selection clause favoring New York, the clause was clearly "reasonably communicated" to ROW.

To determine whether a clause is mandatory or permissive, the Court examines its language. *See Phillips*, 494 F.3d at 386 (finding forum selection clause mandatory when it conferred "exclusive jurisdiction" on the designated forum); *Terra Firma Invs. (GP) 2 Ltd. v. Citigroup Inc.*, 725 F. Supp. 2d 438, 440 (S.D.N.Y. 2010) (noting forum selection clause was mandatory where it provided that the parties "irrevocably submit to the exclusive jurisdiction of the English Courts"). The forum selection clause in the Residence Agreement states that each party "*irrevocably* agrees to submit to the *exclusive* jurisdiction of the Supreme Court of the State of New York, New York County, of the United States of America, or of the United States District Court for the Southern District of New York." Residence Agreement ¶ 8 (emphasis added). This language is classically mandatory.

The third prong of the test focuses on whether the party disputing personal jurisdiction and the claims against that party are subject to the forum selection clause. For the time being, the Court inquires only whether ROW is subject to the clause; the Court examines later which claims are subject to the clause. It is well settled that forum selection clauses may bind non-signatories. *See Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009) ("[T]he fact a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause."). In determining when a non-signatory is bound, courts look at whether the non-signatory is so "closely related to the dispute . . . that it becomes foreseeable that it will be bound." *Weingard v. Telepathy, Inc.*, No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *5–6 (S.D.N.Y. Nov. 7, 2005) (citation omitted) (non-signatory defendants held closely related where the non-signatory and signatories alleged to act in concert); *see also In re*

*Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011) (non-signatory defendants held closely related where they were affiliates of the signatory hired to carry out its contractual obligations); *Nanopierce Tech., Inc. v. Southbridge Capital Mgmt.*, No. 02 Civ. 0767 (LBS), 2003 WL 22882137, at *5–6 (S.D.N.Y. Dec. 4, 2003) (non-signatory defendant held closely related where she served as Chief Financial Officer of the signatory at the relevant time); *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99 Civ. 10550 (SHS), 2000 WL 1277597, at *3–5 (S.D.N.Y. Sept. 7, 2000) (non-signatory defendants held closely related where the contract had been formed with intention to benefit them); *accord Tate & Lyle Ingredients Americas, Inc. v. Whitefox Techs. USA, Inc.*, 98 A.D.3d 401, 402 (1st Dep't 2012) ("[T]he federal courts permit a forum selection clause to bind a nonsignatory defendant that has a sufficiently close relationship with the signatory *and* the dispute to which the forum selection clause applies." (emphasis in original) (collecting cases)).

    The "closely related" test is necessarily satisfied where the defendant is a third-party beneficiary of the agreement, but that is not required. *In re Optimal U.S. Litig.*, 813 F. Supp. 2d at 369. Rather, "[a] non-party is 'closely related' to a dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated upon' the signatory party's interests or conduct." *Weingard*, 2005 WL 2990645, at *4 (quoting *Lipcom v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998)); *see also Aguas Lenders Recovery Grps.*, 585 F.3d at 701 (citing, with approval, *Lipcom*, which held non-signatories bound by forum selection clause where they had provided letters of credit to signatories and "had interests in the litigation that were 'directly related to, if not predicated upon' those of the signatories"); *Cuno, Inc. v. Hayward Indus. Prods.*, No. 03 Civ. 3076 (MBM), 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) (holding non-signatory plaintiff bound by forum selection clause where its interests as a

licensee were dependent on the signatory's contractual rights (cited, with approval, in *Horvath v. Banco Comercial Portugues, S.A*, 461 F. App'x. 61, 63 (2d Cir. 2012))); *accord id.* at *6 ("[I]t is well established that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.'" (alteration in original)).

Here, ROW argues that the forum selection clause in the Residence Agreement does not bind ROW because it was neither a third-party beneficiary under that agreement nor an agent of Overseas Ventures. The relevant inquiry, however, is whether ROW's interests were "closely related" to those of Overseas Ventures, and the answer to that question is, emphatically, yes.

Overseas Ventures alleges that ROW served as its agent, in brokering its sales agreement with the buyer, Shetland. And the Marketing Agreements between ROW and Overseas Ventures confirm that ROW affirmatively took on that agency role. *See* 2008 Marketing Agreement ¶ 1; 2011 Marketing Agreement ¶ 1. Under those agreements, ROW was also to act as "escrow agent and facilitator for the closing of any transaction involving the [Residency] Rights." 2008 Marketing Agreement ¶ 4; 2011 Marketing Agreement ¶ 4(d). This kind of broker-seller relationship traditionally gives rise to agency obligations. *See Nuvest, S.A. v. Gulf & W. Indus., Inc.*, 649 F.2d 943, 947 (2d Cir. 1981) ("[T]he broker is the seller's agent for procuring a buyer."). During oral argument, counsel for ROW referred to the Marketing Agreements as sales *agency* agreements. Also relevant are the multiple roles ROW played: As counsel for Overseas Ventures clarified during oral argument, in the sales process, ROW served as broker not only for Overseas Ventures, the seller, but also for Shetland, the buyer, and ROW also acted as the manager for the ship owner, TWOR. ROW thus functioned as agent for all three signatories to the Residence Agreement. Under these circumstances, and given ROW's role preparing the Residence Agreement, ROW, as an agent of Overseas Ventures, it is clear that ROW is

sufficiently "closely related to the dispute" to be bound by the forum selection clause in that agreement. *See In re Optimal U.S. Litig.*, 813 F. Supp. 2d at 369–70 (non-signatory defendants bound by forum selection clause where they were hired as agents of the signatory).

Moreover, even if it had not served as an agent, ROW would still be sufficiently "closely related to the dispute" to be bound by the forum selection clause. That is because under the Marketing Agreements, ROW was entitled to receive compensation only upon the closing of a sale, *see* 2008 Marketing Agreement ¶ 2; 2011 Marketing Agreement ¶ 2(a), and the sale here was pursuant to the Residence Agreement. ROW thus has a strong interest in participating in this lawsuit, in which the validity and terms of the Residence Agreement are at issue and the outcome of which may dictate whether or not ROW is entitled to compensation.

It is, finally, significant that Count Three, alleging that ROW aided and abetted the conversion of Apartment 601, tracks Overseas Ventures' conversion claims (Counts One and Two) against Residence Agreement signatories Shetland and TWOR. Overseas Ventures alleges that the three defendants effectively acted "in concert" in connection with the sale of that apartment. In this respect, this case is akin to *Horvath* and *Weingard*, in which non-signatory defendants were alleged to have acted in concert with signatory defendants. In both cases, this alleged collusion was held to justify binding the non-signatory to the forum selection clause. *See Horvath*, 461 F. App'x. at 63; *Weingard*, 2005 WL 2990645, at *6.[3]

---

[3] In *Horvath*, the plaintiff asserted an aiding and abetting claim against the non-signatory defendant for helping the signatory defendant to breach its fiduciary duty. *Horvath*, 461 F. App'x. at 63–64. The non-signatory defendant was held to be bound by the forum selection clause because the plaintiff's claims against it were "virtually identical to, and arise out of the same transactions as those asserted against the signatory defendant." *Id.* Similarly in *Weingard*, the plaintiff alleged that all the defendants, signatory and non-signatory, acted in concert to deprive him of his domain name. *Weingard*, 2005 WL 2990645, at *6.

Overseas Ventures has thus satisfied the first three prongs of the forum selection clause inquiry. The fourth and final prong permits ROW to rebut the presumption of enforceability by showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Phillips*, 494 F.3d at 384 (quoting *M/S Bremen*, 407 U.S. at 15). Here, however, ROW does not claim that the Residence Agreement or the forum selection clause is in any way fraudulent or overreaching, or that enforcement would be unreasonable or unjust. Quite the contrary: Given that ROW itself allegedly drafted the Residence agreement, it is appropriate—and just—for claims against ROW arising under that agreement to be litigated in the forum specified in that agreement.

For these reasons, the forum selection clause in the Residence Agreement binds ROW.

### 2. Are the Claims against ROW Subject to the Forum Selection Clause?

The Court next examines which of the three claims against ROW fall within the scope of the forum selection clause. The clause covers "any action, suit or other proceedings *arising out* of this Agreement, or arising out of the subject matter hereof, or arising out of any of the transactions contemplated under this Agreement." Residence Agreement ¶ 8 (emphasis added). To "arise out of," in turn, means "to originate from a specified source, and generally indicates a causal connection. Those words do not encompass all claims that have some possible relationship with the contract, including claims that may only *relate to*, be *associated with*, or *arise in connection with* the contract." *In re Optimal Litig.*, 813 F. Supp. 2d at 364 (emphasis in original) (internal citations omitted). Therefore, for a claim to be covered by the forum selection clause, the Residence Agreement must be the source of the right that Overseas Ventures seeks to vindicate.

12

The Court first examines Count Three, which accuses ROW of aiding and abetting the conversion of Apartment 601. Overseas Ventures alleges therein that ROW "substantially assisted Defendant Shetland in achieving the conversion of Apartment 601" by refusing to alert TWOR that only Apartment 603 had been sold to Shetland, and that ROW knew that the Residence Agreement did not refer to Apartment 601. Compl. ¶¶ 56–57. To establish that ROW aided and abetted Shetland in unlawfully converting Apartment 601, Overseas Ventures would necessarily have to show that under the Residence Agreement, Shetland did *not* acquire Apartment 601. The conversion claim therefore centrally turns on the transaction embodied in the Residence Agreement: Did it encompass the sale of Apartment 601—in which case Overseas Ventures' aiding and abetting claim against ROW is not viable—or did it not? Viewed in this light, Overseas Ventures' claim against ROW for aiding and abetting conversion can comfortably be said to "aris[e] out of . . . the transactions contemplated under this [a]greement." Residence Agreement ¶ 8. *See, e.g.*, *Cfirstclass Corp. v. Silverject PLC*, 560 F. Supp. 2d 324, 330 (S.D.N.Y. 2008) (holding that plaintiff's tort claims arose out of the terms of the contract, and therefore are subject to the forum selection clause, because resolution of those claims "necessarily require analysis of the parties' rights and duties under the relevant agreements"); *cf. Phillips*, 494 F.3d at 390 (holding that plaintiff's copyright claims did not arise out of the contract containing the forum selection clause because any such rights derived from his authorship, not from the contract). Count Three is, therefore, subject to the forum selection clause.

By contrast, the two other claims against ROW—Count Four, for breach of contract, and Count Five, for breach of fiduciary duty—plainly arise not out of the Residence Agreement, but out of the Marketing Agreements to which ROW itself is a party. And those agreements each

contain forum selection clauses, mandating that claims thereunder be brought in Florida. In the breach of contract count, Overseas Ventures explicitly identifies the alleged breach as having been a breach of the Marketing Agreements. *See* Compl. ¶ 63–65. During oral argument, counsel for Overseas Ventures confirmed that its claim is that ROW breached both of those agreements. Specifically, the Complaint alleges that ROW breached the Marketing Agreements by misleading potential buyers, failing to use best efforts to market and sell, and making misrepresentations to Defendant Shetland regarding Apartment 603. *Id.* ¶ 64. Although the last of these allegations relates to the subject matter of the Residence Agreement, the substance of the breach of contract claim is that ROW failed to perform the duties that the Marketing Agreements imposed upon it. Given that the basis for the breach of contract claim is the Marketing Agreements, Count Four does not fall under the Residence Agreement's forum selection clause.

The same is true of Count Five, which claims that ROW breached the fiduciary duty owed to Overseas Ventures. Count Five alleges that ROW took on fiduciary duties to Overseas Ventures by entering into the Marketing Agreements, under which it served as Overseas Ventures' broker. Count Five, in fact, cites those agreements, including the provision in them to the effect that ROW's duties to Overseas Ventures were governed by Florida law. *Id.* ¶¶ 68–69. The source of ROW's fiduciary duty to Overseas Ventures is thus the Marketing Agreements, not the Residence Agreement.[4]

In sum, there is personal jurisdiction over ROW as to Count Three under the forum selection clause in the Residence Agreement, but not as to Counts Four or Five.

---

[4] In light of the language in the Marketing Agreements making designated courts in Florida the "exclusive venue[s]" for claims arising under those agreements, dismissal of Counts Four and Five in favor of such courts would appear to be required even if there were personal jurisdiction in New York over ROW. However, because the Court finds that there is neither general nor specific jurisdiction over ROW in New York, there is no occasion to reach that issue.

**C. Personal Jurisdiction**

The Court, finally, inquires whether personal jurisdiction otherwise exists in this District over ROW. *See Grand River Enters. Six Nations Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005).

In a diversity action, a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302. *Realuyo v. Abrille*, 93 F. App'x 297, 298–99 (2d Cir. 2004); *Delagi v. Volkswagenwerk A.G*, 29 N.Y.2d 426, 430 (1972). Here, there is no credible claim of specific jurisdiction over ROW. C.P.L.R. § 302(a) enumerates the different types of acts, occurring within the state, that can serve as the basis of jurisdiction. The Complaint, however, is devoid of any allegations that the events at issue in Counts Four and Five occurred in New York. Overseas Ventures does not, for example, allege that the Marketing Agreements were signed in New York or that any relevant actions taken pursuant to it occurred in New York.

As to general jurisdiction, "[t]he New York Court of Appeals has interpreted [C.P.L.R. § 301] to mean that 'a foreign [defendant] is amenable to suit in [New York] if it is engaged in such a continuous and systemic course of doing business here as to warrant a finding of its presence in this jurisdiction.'" *Realuyo*, 93 F. App'x. at 298 (quoting *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 536 (1967)); *see also Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (for general jurisdiction to exist, a foreign corporation must be found to be "doing business" in the state "not occasionally or casually, but with a fair measure of permanence and continuity" in order to find personal jurisdiction (citation omitted)). The foreign corporation must have engaged in "continuous, permanent, and substantial activity in New

York." *Id.* (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990)).

Here, even making all inferences in favor of the plaintiff, ROW's contacts in New York do not satisfy the "doing business" standard. In an affidavit submitted along with Overseas Ventures' brief, Jessica Estrada, a former ROW sales agent, alleges generally that ROW assigned employees to "market and solicit potential purchasers or renters" in territories, one of which includes New York State. Estrada Aff. ¶ 3. Estrada states that, as part of this effort, ROW employees worked with a New York City public relations company and a real estate concern based in New York to arrange sales events in New York, including aboard the World, at times when it was docked in New York. *Id.* at ¶¶ 4–10. However, other than the solicitation of business through retained agents, Overseas Ventures has not shown any presence by ROW in New York. ROW is not alleged, for example, to have an office, bank accounts or other property, or employees in New York. *See Shultz v. Safra Nat'l Bank of N.Y.*, 377 F. App'x. 101, 101 (2d Cir. 2010) (summary order) (noting these as relevant factors to general jurisdiction inquiry (citing *Landoil Res. Corp.*, 918 F.2d at 1043)).

The facts alleged are insufficient to supply general jurisdiction over ROW, because "the 'mere solicitation of business' does not constitute doing business within the state absent some other New York-directed activities." *Girl Scouts of U.S. v. Steir*, 102 F. App'x. 217, 219 (2d Cir. 2004) (summary order). To be sure, "if the solicitation is substantial and continuous, and defendant engages in other activities of substance in the state, then personal jurisdiction may properly be found to exist." *Landoil Res. Corp.*, 918 F.2d at 1043–44. Here, however, Overseas Ventures has not made a *prima facie* showing of either substantial or continuous solicitation or that ROW undertook other substantive activities in the state. The Court, therefore, holds, on the

record presented, that personal jurisdiction is lacking against ROW on a theory of general jurisdiction. Counts Four and Five, therefore, must be dismissed for lack of personal jurisdiction.

## CONCLUSION

For the reasons stated above, defendant ROW's motion to dismiss the claims against it is denied as to Count Three, but granted as to Counts Four and Five. The Clerk of Court is directed to terminate the motion pending at docket number 8. The parties are directed to submit, by November 5, 2012, a proposed Civil Case Management Plan and Scheduling Order, consistent with the Court's Individual Rules.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: October 26, 2012
      New York, New York